IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MARTINE DEVINE, | ) |
|---|---|
| Plaintiff, | ) |
| | ) |
| v | ) 2:13-cv-220 |
| | ) |
| PITTSBURGH BOARD OF PUBLIC EDUCATION *also known as* SCHOOL DISTRICT OF THE CITY OF PITTSBURGH AND **LOUANN ZWIERYZNSKI**, | ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER OF COURT**

Now pending before the Court is the MOTION FOR SUMMARY JUDGMENT (ECF No. 38), filed by Defendants Pittsburgh Board of Public Education (the "School District") and Louann Zwieryznski ("Zwieryznski ") with a brief in support. Plaintiff ("Devine") filed a brief in opposition to the motion and Defendants filed a reply brief. The parties have thoroughly developed their respective positions regarding the Concise Statements of Material Facts ("CSMFs") and have submitted numerous exhibits (ECF Nos. 39, 40, 43, 49, 50, 51, 54, 55). The motion is ripe for disposition.

Factual and Procedural Background

This is an employment discrimination case. As set forth in the Second Amended Complaint[1], Devine asserts claims for race discrimination under Section 1983 and Title VII and for Retaliation under the Rehabilitation Act. Defendants seek summary judgment on all counts.

Devine has a Masters Degree in Education and a Reading Specialist Certificate. She began working for the Pittsburgh School District in 2009 as an intervention specialist. For the

---

[1] On August 29, 2013, the Court issued a Memorandum Opinion and Order which granted in part and denied in part Defendants' Motion to Dismiss the First Amended Complaint. Subsequently, Plaintiff was granted leave to file a Second Amended Complaint to add a retaliation claim.

2011-2012 school year, Devine accepted an assignment teaching kindergarten at the Faison Elementary School ("Faison"). Devine had some prior experience teaching kindergarten as a student teacher and as a substitute in a different school district. She was classified as a non-tenured teacher/temporary professional employee.

Zwieryznski commenced her position as principal at Faison in the 2011-2012 school year. Faison was a challenging school, with an extremely low academic achievement level and discipline issues. Faison Elementary serves urban minority students almost exclusively. Devine and Zwieryznski are both Caucasian. The other four kindergarten teachers at Faison in 2011-2012 were also Caucasian. The five first-grade teachers at Faison that year were African-American.

According to Plaintiff, Zwieryznski is very conscious of race and attributes the root of social and cultural problems to "white privilege." Zwieryznski allegedly favored black teachers. Devine avers that she raised legitimate concerns with Zwieryznski regarding persistent behavioral and emotional problems of some of her students, which caused Zwieryznski to stereotype her as the embodiment of "white privilege" who was unable engage with and handle urban black children. Devine contends that Zwieryznski began to orchestrate her potential dismissal and cover up the discrimination by performing a series of unduly critical observations of her classroom performance.

On January 13, 2012 Devine received a satisfactory rating for the first semester of the school year. By late January, Zwieryznski was contemplating putting Devine on an Employee Improvement Plan ("EIP") and asked Dr. Lisa Yonek to conduct a formal observation. The evaluation occurred on February 7, 2012 and Zwieryznski also attended. Yonek's report noted that Devine needed to interact with her students in a positive, caring and mutually-respectful

manner and that she had to work to improve classroom management. Devine disagreed with these criticisms.

Devine was placed on an Employee Improvement Plan (EIP) on February 24, 2012. The EIP set forth the following areas for improvement:

1. Preparation
   a. Evidences planning which incorporates elements of effective lesson design;
   b. Aligns adopted curriculum, instructional practices and materials, and assessments to be consistent with school district student achievement standards;
   c. Where applicable, works collaboratively with colleagues in planning and in other school-wide and system-wide activities designed to achieve targets and district goals;
2. Technique
   a. Uses effective classroom management strategies;
   b. Promotes student interest and active classroom participation;
   c. Employs varied and developmentally-appropriate instructional strategies to match needs of students;
   d. Motivates students through use of appropriate and positive reinforcement;
3. Student Reaction
   a. Students are actively engaged in learning;
   b. Students demonstrate democratic principles and recognize the importan[ce] of getting along with others;
   c. Students are required to maintain socially acceptable behavior;
4. Personal Qualities
   a. Develops and maintains professional relationships with colleagues.

Zwieryznski provided Devine with support, coaching and/or observations from: (1) Marla Pelkofer, a reading specialist; (2) Kathryn Romea, a learning environment specialist; and (3) Amy Boyd, a math coach. Boyd did not perform any actual math coaching, though, because of problems with classroom behavior-management.

On May 24, 2012 Devine received an "unsatisfactory" rating. Because she was not tenured, the rating resulted in a warning from Human Resources that she would be fired with cause unless she resigned by June 15, 2012. Facing that ultimatum, Devine resigned.

Many of the proposed CSMF's are, in fact, disputed by the parties. Given the Court's resolution of the motion, it need not conclusively resolve each dispute. In addition to disputing the specific criticisms listed on the EIP, the parties disagree as to whether the alleged misbehavior in Devine's classroom was class-wide or limited to a few specific students with recognized behavioral issues; whether Devine's students were uniquely poorly-behaved compared to other classrooms at Faison; whether Devine's performance improved after support and coaching; and whether student test scores demonstrate that Devine was an effective teacher. In particular, Plaintiff points to various African-American first-grade teachers who seemingly had similar performance issues but were not placed on an EIP or rated unsatisfactory.

Standard of Review

Summary judgment is only appropriate if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Therefore, the court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *see also Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3d Cir. 1993) ("Summary judgment is precluded if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law.") An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson.*, 477 U.S. at 248.

In order to be entitled to summary judgment, the moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's

case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Conoshenti v. Public Service Electric & Gas Company*, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. *See Anderson*, 477 U.S. at 248; *see also McGreevy v. Stroup,* 413 F.3d 359, 363-64 (3d Cir. 2005).

In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Matreale v. New Jersey Dept of Military & Veterans Affairs*, 487 F.3d 150, 152 (3d Cir. 2007). Final credibility determination on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *See Josey*, 996 F.2d at 632.

The United States Supreme Court established in *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 151 (2000), that at the summary judgment stage of an age discrimination case, the court should review the entire record but "must disregard all evidence favorable to the moving party that the jury is not required to believe." For example, a jury may choose to disbelieve the testimony of an interested witness such as the decision-maker. A court may, however, consider "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id. Accord Hill v. City of Scranton*, 411 F.3d 118, 129 n. 16 (3d Cir. 2005) (*citing Reeves*, 530 U.S. at 151). In this case, it appears to be undisputed that Zwieryznski is an interested witness

because she was the decision-maker on behalf of the school district and is also a Defendant in her individual capacity.

Legal Analysis

    A. Equal Protection (§ 1983) and Title VII Claims

Race discrimination claims under § 1983 and Title VII are analyzed together under the same legal standards. The elements of a *prima facie* case of employment discrimination are: (1) the plaintiff belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). Plaintiff's same-race discrimination theory, i.e., that Caucasian principal Zwieryznski applied a different standard to Caucasian teachers who were associated with "white privilege," is cognizable. Nevertheless, Defendants contend that Plaintiff has failed to develop sufficient evidence regarding disparate treatment of other teachers.

The Court must first decide which legal framework should be applied to this case. Plaintiff contends that she has developed both "direct" and circumstantial evidence of race-based animus. Claims based on circumstantial evidence are assessed under the familiar burden-shifting ["pretext"] framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), while claims based on "direct evidence" must be assessed under the mixed-motive framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276–77 (1989). *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 598 F. App'x 109, 111 (3d Cir. 2015). Under the *Price Waterhouse* theory of direct discrimination, once Plaintiff shows that race was a "substantial" factor in motivating the adverse employment action against her, the burden of persuasion on the issue of causation

6

shifts to the employer to prove that it would have terminated Plaintiff even if it had not considered her race. *Fakete v. Aetna, Inc.,* 308 F.3d 335, 338 (3d Cir. 2002).

1. Direct Evidence

The United States Court of Appeals for the Third Circuit has defined "direct evidence" as that which is "sufficient to allow the jury to find that the decision makers placed a substantial negative reliance on the plaintiff's [race] in reaching their decision." *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 512 (3d Cir. 2004). "Such evidence leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it when [she] made the challenged employment decision." *Fakete*, 308 F.3d at 338–39 (*quoting Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097 (3d Cir. 1995)). There is not a precise definition of the quantum of evidence that qualifies as "direct," and even certain circumstantial evidence may be sufficient, as long as that evidence directly reflects the unlawful bias for an adverse decision. *Id.* at 339. The Third Circuit has explained that a statement that reflects a discriminatory animus made by an individual involved in the decision making process may qualify as direct discrimination. *Id. (quoting Hook v. Ernst and Young*, 28 F.3d 366, 374 (3d Cir. 1994)). On the other hand, as explained in *Johnson v. R.R. Donnelly Printing Co.*, 2013 WL 5971071, at *5 (W.D. Pa. Nov. 8, 2013) (citations omitted):

> The evidence must be so revealing of discriminatory animus that it is unnecessary to rely on any presumption from a *prima facie* case to shift the burden of production. Thus, only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence.

7

in *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1112 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that an age-related comment ("if you are getting too old for the job") made by the decision-maker did not constitute "direct evidence" because the comment was made some 4-5 months earlier and was not made in the context of the employment decision-making process.

In this case, Devine cites the following as "direct evidence": (1) Zwieryznski's life experiences of having a bi-racial child out of wedlock; (2) notations she made at a professional development presentation in November 2010 regarding "race matters to me"; (3) notations she made at a conference in May 2012 to the effect that her school "is the heart of the racial equity work" and her students "need the most effective teachers every day." Zwieryznski further stated: "There are people in my building that have low expectations of our students & families and the conversations had to happen." Exh. 6a; (4) Zwieryznski's comments that it was "her life mission to stamp out white privilege" (Pelkofer at 45); and (5) Zwieryznski's comment that "black students should look at black faces" (Pelkofer at 47).

The gravamen of Plaintiff's theory is that Zwieryznski viewed Devine as an embodiment of white privilege because Devine had low expectations for her students. According to Plaintiff, Zwieryznski's attitude toward Devine changed drastically after Devine sent emails in October and November 2011 in which she thought that five of her students should be labeled as "Emotionally Disturbed" such that they could receive additional support services.

The Court cannot accept Plaintiff's attempt to conflate "low expectations" with race. Having "low expectations" is not a protected class under Title VII. Such an attitude or opinion could be held by a person of any race. To prevail in this case, Plaintiff must prove that she was treated disparately because she is Caucasian – not because Zwieryznski felt that she had low

8

expectations of her students. The notations from 2010 are far too remote in time to constitute direct evidence of discrimination in an employment decision in 2012. Similarly, Zwieryznski's alleged comments about stamping out white privilege occurred during a leadership story at a staff meeting and the alleged comment about black students seeing black faces occurred at a book club. Both contexts were entirely unrelated to Devine's performance evaluations. None of the evidence cited by Plaintiff occurred in the specific context of placing Devine on an improvement plan or rating her as unsatisfactory. Nor does the evidence rise to the level necessary to support a logical inference of bias in those decisions. In sum, the Court concludes that Plaintiff has not developed "direct evidence" of race discrimination.

2. Pretext

Thus, this case will be analyzed under the *McDonnell-Douglas* burden-shifting regime. Plaintiff has made out a prima facie case of discrimination. Defendants have articulated a legitimate, non-discriminatory reason for their action. Thus, the key question is whether Defendants' reasons were a pretext for race discrimination. In *Keller*, 130 F.3d at 1108, the Court of Appeals for the Third Circuit recognized that to determine whether a plaintiff has demonstrated pretext, "[t]he question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." In *Keller*, the court further explained that to survive the summary judgment stage, a plaintiff must show that the employer's decision "was so plainly wrong that it cannot have been the employer's real reason." The focus is upon whether the cited reasons honestly motivated the decision at issue, not whether or not those reasons are factually accurate. *See Stahlnecker v. Sears*, 2009 WL 661927, at *6 (E.D.Pa. Mar. 11, 2009). Phrased another way, pretext is not shown by evidence that "the

9

employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir. 1994).

There are several ways to demonstrate pretext. One way is to "contradict the core facts put forward by the employer as a legitimate reason for its decision." *Kautz v. Met-Pro Corp*, 412 F.3d 463, 467 (3d Cir. 2005). Alternatively, if "the defendant proffers a bagful of legitimate reasons," and a plaintiff casts "substantial doubt on a fair number of them," such "may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons." *Fuentes,* 32 F.3d at 764 n. 7. Moreover, the Third Circuit has instructed courts to review the record as a whole and "concentrate not on individual incidents, but on the overall scenario." *Bray v. Marriott Hotels*, 110 F.3d 986, 991 (3d Cir. 1997) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990)); see also *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1083 (3d Cir. 1996). Thus, a court at the summary judgment stage must determine if the totality of the evidence, rather than each individual argument, permits a reasonable factfinder to infer that Devine was terminated based on her race. *See Id.*

In this case, Plaintiff is able to point to evidence which, when viewed in the light most favorable to her, could permit a reasonable jury to conclude that Defendants' cited reasons for her EIP and unfavorable review were a pretext for race discrimination. Although the Court has concluded that the evidence discussed above does not rise to "direct" evidence, such evidence may be considered to evaluate pretext.

Plaintiff has pointed to allegedly similarly-situated comparators. As succinctly summarized in *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014), a comparator need not be identical, but must be similar in "all relevant respects":

> Factors relevant to the analysis are whether the employees dealt with the same supervisor, were subject to the same standards, shared similar job responsibilities and the nature of the misconduct. *Wilcher,* 441 Fed.Appx. at 881–82 (citing *Lee,* 574 F.3d at 259–261; *Burks v. Wis. Dep't of Transp.,* 464 F.3d 744 (7th Cir. 2006)); *Opsatnik,* 335 Fed.Appx. at 222–23 (citing *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617–18 (7th Cir. 2000)). Whether comparators are similarly situated is generally a question of fact for the jury. *See McDonald v. Village of Winnetka,* 371 F.3d 992, 1002 (7th Cir. 2004) (collecting cases).

The record in this case reflects that no African-American teachers were placed on an improvement plan or rated unsatisfactory by Zwieryznski in 2011-2012. Yet, several African-American first-grade teachers received substantial support services from Romea, Boyd and/or Pelkofer. Boyd testified that she most regularly spent time coaching Doreen Allen, a first-grade teacher. Keisha Jones, another first-grade teacher, also received coaching from Boyd. Romea testified that first-grade teacher Trish Mayo struggled with teaching academics. Mayo received coaching from Boyd. Romea testified that she spent more time with first-grade teacher Lita Jackson than with Devine. Romea further described Jackson's classroom as very chaotic, with kids running around. Pelkofer testified that Jackson was "really struggling." Zwieryznski agreed that Jackson struggled with classroom management, writing lesson plans and engaging students and considered putting Jackson on an EIP. A jury could disbelieve Zwieryznski's explanation that she did not do so because Jackson went on medical leave. Several African-American teachers (Mayo, Jackson, Spears and Motley) had more repeated referrals for discipline than Devine. Katie Romea testified that there were times when Zwieryznski was more lenient with African-American teachers as far as procedures and classroom protocols. Romea Dep. at 36, 52. In sum, the questions of whether these teachers are actually similarly-situated;

11

whether they were treated disparately; and whether such treatment demonstrates that Plaintiff was discriminated against because of her race are for the jury.

There is also evidence that contradicts the "core facts" put forward as the reasons for Defendants' decision. *See Kautz*, 412 F.3d at 467. Pelkofer stated that the behavior problems in Devine's classroom were limited to several specific students. Pelkofer at 54-55. There were widespread behavior problems throughout the school. Romea at 44, 63; O'Connell at 16-17. Romea testified that contrary to Zwieryznski's evaluation, Devine did have structures in place and "definitely planned for her classes." Romea at 64. Pelkofer testified that Devine did work collaboratively and maintained professional relationships. Pelkofer at 62; *See also* Exhibits D272-274, 276-277; Devine Declaration. Finally, Pelkofer and Romea opined that Devine's performance improved over the year. Romea stated that she had a "rough group of kids that year." Romea at 83. Pelkofer did not believe that Devine deserved an unsatisfactory rating. Pelkofer at 71. O'Connell stated in an email to Devine that he enjoyed working with her; that she "had a tough group this year"; and that she "dealt with them well." Appendix 13a.

The Court recognizes Defendants' argument that broad, conclusory opinions of co-employees are generally not admissible. *See, e.g., Javornick v. UPS*, 2008 WL 4462280 at *3 (W.D. Pa. 2008). On the other hand, when the employer's asserted reason is poor performance and the issue is whether that reason is pretextual, the Third Circuit Court of Appeals has accepted co-worker testimony and an employee's self-evaluation and history of positive performance. *Sempier v. Johnson & Higgins,* 45 F.3d 724, 731-32 (3d Cir. 1995) (distinguishing *Billet v. CIGNA Corp.*, 940 F.2d 812 (3d Cir. 1991)). To avoid summary judgment, a plaintiff must point to evidence showing: (1) that she "satisfied the criterion that the decisionmakers disapproving of her relied upon (e.g., by showing that others no more qualified than [she] under

12

that criterion were not treated adversely)"; or (2) that the decisionmakers did not actually rely upon that criterion. *Fuentes*, 32 F.3d at 767.

Defendants' reliance on *Vogel v. Pittsburgh Pub. Sch. Dist.*, 40 F. Supp. 3d 592, (W.D. Pa. 2014), is misplaced. The *Vogel* Court explained that plaintiff had "failed to proffer any evidence that state certified evaluators made similar observations with respect to these younger teachers." *Id*. at 615. In this case, by contrast, Plaintiff points to evidence from coaches and evaluators who personally observed Devine's performance (and that of the alleged comparators) as part of their official job duties.

While the observations of co-workers such as Pelkofer, Romea, Boyd and O'Connell are somewhat subjective, such subjectivity is inherent in the categories set forth in the performance review. When viewed in the light most favorable to Plaintiff, the testimony of these observers casts doubt on the "core facts" in Zwieryznski's evaluation, which was equally subjective. *See, e.g. Kelly v. US Steel*, 2012 WL 3144314 (W.D. Pa. 2012) (McVerry, J.) (former supervisor permitted to testify in effort to show that performance review by current supervisor was pretext for discrimination). Such testimony must be limited to the personal knowledge of each witness, however. *See Javornick.*

To be sure, Defendants have developed substantial evidence is support of their theory that Devine was a poor teacher. Defendants will likely be able to show that although Devine began the year with promise, she never developed effective classroom management techniques and practices and often resorted to yelling. As the year went on, Zwieryznski became increasingly concerned. On February 7, 2012 Dr. Lisa Yonek conducted a formal observation of Devine, which Zwieryznski attended, and identified various shortcomings. On February 24, Zwieryznski placed Devine on an EIP which set forth areas in which improvement was necessary in

13

preparation, technique, student reaction and personal qualities. Devine was given support from Romea, Pelkofer and Boyd, but did not display sufficient improvement, as reflected in the notes of their observations. Plaintiff's theory of anti-white bias by Zwieryznski is undercut by the fact that the number of Caucasian teachers at Faison under Zwieryznski increased from 37 in 2011-2012 to 56 in 2012-2013. Thus, according to Defendants, the unsatisfactory rating was justified and had nothing to do with Devine's race.

Ultimately, it is the role of the jury to determine which version of events to believe. In *Hendricks v. Pittsburgh Public Schools*, 2015 WL 540030 (W.D. Pa. February 10, 2015), Judge Nora Barry Fischer held that similar same-race discrimination claims by another teacher at Faison survived summary judgment.

In accordance with the foregoing, the motion for summary judgment on Counts 1 and 2 of the Second Amended Complaint will be **DENIED**.

B. Retaliation Claim

In Count 3 of the Second Amended Complaint, Devine asserts a claim for retaliation under the Rehabilitation Act. The Court notes that Plaintiff's retaliation theory has changed. In her First Amended Complaint, Plaintiff contended that Zwieryznski retaliated by placing Devine on an improvement plan on February 24, 2012 because Devine had filed a Notice of Work-Related Disability after being assaulted by a student the previous day. After Defendants filed a motion to dismiss, Plaintiff conceded that her wrongful discharge claim based on a "workers compensation retaliation" theory failed to state a valid claim. Now, Plaintiff theorizes that the retaliation was not based on the assault/disability/taking of leave, but that the incident merely alerted Zwieryznski, once again, to Devine's earlier efforts to obtain support services for that

14

student.  *Compare* First Amended Complaint ¶¶ 34-35 *with* Second Amended Complaint ¶¶ 36-38, 72-81.

Retaliation claims under the Rehabilitation Act use the same framework as retaliation claims arising under Title VII.  *Krouse v. Am. Sterilizer Co*., 126 F.3d 494, 500 (3d Cir. 1997). Thus, to state a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's action.  *Fogleman v. Mercy Hosp*., 283 F.3d 561, 567–68 (3d Cir. 2002) (*quoting Krouse*, 126 F.3d at 500).

Defendants challenge the "protected activity" and "causation" prongs.  To meet the "protected activity" prong, Plaintiff must show that she was discriminated against because she either: (1) opposed any practice made an unlawful employment practice, or (2) made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing. Protected activity is not limited to the filing of formal charges; an informal protest of discriminatory employment practices is sufficient.  However, the "protest, in whatever medium, must specifically relate to the protected conduct allegedly being infringed."  *Hibbard v. Penn–Trafford Sch. Dist*., 2014 WL 640253, at *16 (W.D. Pa. Feb.19, 2014) (*citing Barber v. CSX Dist. Servs*., 68 F.3d 694, 701 (3d Cir. 1995)).  The Third Circuit also provided guidance on this issue in *Curay-Cramer vs. Ursuline Academy of Wilmington, Inc.,* 450 F.3d 130, 134-35 (3d Cir. 2006), in which it held that a teacher who had been terminated by a Catholic school for supporting a pro choice position had not engaged in "protected activity" because her pro-choice advocacy did not constitute opposition to an illegal "employment practice" under Title VII.

15

There is no evidence of "participation" by Devine. As to "opposition," Plaintiff points to several emails in which she sought additional support services for students whom she thought may be emotionally disturbed. (Exhibits 34, 37-38, 42, 43, 45, 50-55). This does not suffice. In *O'Shea v. Interboro Sch. Dist.*, 2014 WL 1673237, at *9 (E.D. Pa. Apr. 28, 2014), the Court held that general comments by a school official based on her "focus to increase the quality of services provided to children with disabilities" did not constitute "protected activity" because there was no specific allegation of discrimination in violation of the law. The same analysis governs here. Devine did not engage in the type of "protected activity" necessary to make out a retaliation claim because she never alleged that the school was violating the Rehabilitation Act. *See Curay-Cramer.*

In addition, Plaintiff has failed to establish the requisite causal link. Devine's initial requests for student support services occurred in late October and early November, 2011. Devine was not placed on an improvement plan until February 24, 2012, almost four months later. In the interim, on January 13, 2012, Devine received a satisfactory rating for the first semester. Defendants Exhibit 12. The ultimate rating of "unqualified" was not given to Devine until late May 2012. No reasonable jury could conclude, based on the evidentiary record in this case, that Devine's alleged opposition to the Rehabilitation Act caused her to be placed on an improvement plan or rated unqualified.

In accordance with the foregoing, the motion for summary judgment on Count 3 of the Second Amended Complaint will be **GRANTED**.

Conclusion

In accordance with the foregoing, Defendants' MOTION FOR SUMMARY JUDGMENT (ECF No. 38) will be **DENIED IN PART** as to the disparate treatment claims under § 1983 and Title VII in Counts 1 and 2 of the Second Amended Complaint and **GRANTED IN PART** as to the retaliation claim in Count 3 of the Second Amended Complaint.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARTINE DEVINE,<br>　　　　　Plaintiff,<br><br>　　　　　v<br><br>PITTSBURGH BOARD OF PUBLIC<br>EDUCATION *also known as* SCHOOL DISTRICT<br>OF THE CITY OF PITTSBURGH AND **LOUANN<br>ZWIERYZNSKI**,<br>　　　　　Defendants. | 2:13-cv-220 |

## ORDER OF COURT

AND NOW, this 10th day of June 2015, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that Defendants' MOTION FOR SUMMARY JUDGMENT (ECF No. 38) is **DENIED IN PART** as to the disparate treatment claims under § 1983 and Title VII in Counts 1 and 2 of the Second Amended Complaint and **GRANTED IN PART** as to the retaliation claim in Count 3 of the Second Amended Complaint.

Plaintiff shall file a Pretrial Statement on or before July 8, 2015. Defendants shall file their Pretrial Statement on or before August 5, 2015. A Pretrial Conference shall be held on September 9, 2015 at 9:30 a.m.

　　　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　s/Terrence F. McVerry
　　　　　　　　　　　　　　　　　　　United States District Judge

cc:　　**Edward A. Olds, Esquire**
　　　　Email: edolds@earthlink.net

　　　　**Brian P. Gabriel, Esquire**
　　　　Email: bgabriel@cdblaw.com